## STATE OF NEW HAMPSHIRE

**MERRIMACK, SS**                                                                                   **SUPERIOR COURT**

Sheila N. Hennebury

v.

The Prudential Insurance Company of America

### COMPLAINT

NOW COMES the Plaintiff, Sheila N. Hennebury, by and through her attorneys, Normandin, Cheney and O'Neil, PLLC, and says as follows:

### GENERAL ALLEGATIONS

1. Plaintiff, Sheila N. Hennebury [hereinafter "Plaintiff"] is a New Hampshire resident with an address of 429 North Main Street, Franklin, County of Merrimack, New Hampshire;

2. Defendant, The Prudential Insurance Company of America, is a foreign corporation headquartered in New Jersey, with an address of 100 Mulberry Street, Gateway 3, Newark NJ 07102, and is the disability claims administrator of the Group Long Term Disability Policy under which Plaintiff is covered. The address for The Prudential Insurance Company of America's Disability Management Services Division is P.O. Box 13480, Philadelphia, PA 19176;

3. This is an ERISA action brought pursuant to 29 U.S.C. §1132(a)(1)(B). This Court has jurisdiction pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1000-1461 over which this Court possesses jurisdiction pursuant to 29 U.S.C. §1132(e);

### HISTORY AND FACTUAL ALLEGATIONS

4. This case arises from Plaintiff's employment as a Sales Associate in the J. Jill Contact Center in Tilton, N.H.;

5. At all times relevant to this action, Plaintiff was eligible to receive Short and Long Term Disability Benefits under the Group Plan issued to: "The Talbot's Inc.", policy number 43899;

6.  Ms. Hennebury ceased her work as a Sales Associate for J. Jill due to disabling illness on August 17, 2008;

7.  Ms. Hennebury suffers from Polymyalgia Rheumatica [hereinafter PMR] and Fibromyalgia which have rendered her severely disabled. She also suffers from chronic asthmatic bronchitis;

8.  Ms. Hennebury has difficulty in performing the simplest of tasks, including combing her hair and putting on her coat due to pain in her neck, back, shoulders and arms;

9.  Ms. Hennebury has stopped driving as she has difficulty turning the wheel, accelerating and braking and now is forced to rely on her sister's help to transport her to shop, pick up medications or attend to necessary errands. Simply moving from her upstairs bedroom to the first level living area of her home can be a process of more than an hour;

10. At times, Ms. Hennebury is unable to return to her bedroom due to severe pain. Any attempt to push herself or increase her activity levels usually results in increased pain and nausea;

11. Ms. Hennebury has been found totally disabled by the Social Security Administration and is currently receiving Social Security Disability benefits;

12. Disability benefits were initially approved and paid by Prudential;

13. By letter of January 12, 2009, Ms. Hennebury was notified that her claim for Long Term Disability Benefits was denied, allegedly because the medical information received by the Defendant did not support an impairment that would have continued to prevent her from performing the material and substantial duties of her occupation;

14. Plaintiff submitted her first administrative level appeal on or about July 2, 2009, submitting substantial medical documentation her treating providers supporting the above diagnoses;

15. Defendant upheld the decision of January 12, 2009, by letter of September 9, 2009 and Plaintiff submitted a second administrative level appeal;

16. By letter of July 16, 2010, Plaintiff was notified by the Defendant that the original decision to deny her benefits had again been upheld and that her administrative remedies were now exhausted. This action follows.

### Prudential's Analysis of Plaintiff's Claim

17. Defendant's letter of July 16, 2010, is replete with references to surveillance operations conducted by Prudential's agent, Factual Photo, Inc., conducted in August of 2009 and June of 2010;

**EXHIBIT A**

18. Further, Prudential clearly forwarded each of its peer reviewers copies of the surveillance reports obtained;

19. It must be noted that no mention of surveillance footage was ever made in the denial letter of September 2009, though surveillance had allegedly occurred the month prior;

20. In preparation for filing of this action, undersigned counsel obtained what is represented to be the entire administrative record maintained by Prudential;

21. Undersigned counsel also obtained copies of the video surveillance footage taken by Factual Photo, Inc.;

### Prudential's Surveillance Photos and Video are Actually of Ms. Hennebury's Sister, Linda Hennebury

22. Prudential employed Factual Photo, Inc., to conduct surveillance operations on the Plaintiff. This surveillance apparently took place between August 9, 12 and 16, 2009;

23. In a letter of August 18, 2009, to Judith D'Amico of Prudential from Michael Anderson, Field Operations Manager for Factual Photo, Inc., Mr. Anderson states:

> "As you are aware, we conducted surveillance on Sheila Hennebury on August 9, 12 and 16, 2009. During this time, we obtained videotape of your subject standing, walking, ascending stairs, carrying, leaning, bending, entering and exiting a vehicle and driving."

24. On Page 3 of Factual Photo's "Surveillance Report", the writer provides the following physical description of "Ms. Hennebury":

> "Ms. Hennebury may be described as a 58 year old white female, approximately 5'6" tall and weighing around 180 pounds. **She has red hair.**"

(Emphasis added)

25. The remainder of the written report contains two photographs of a woman with a red ponytail walking toward a house and walking in a gas station parking lot. The writer indicates that this is the Plaintiff, Ms. Sheila Hennebury. **It is not. The woman depicted in the photos is Linda Hennebury, Ms. Hennebury's sister with whom Ms. Hennebury lives;**

26. Prudential employed Factual Photo, Inc., a second time to conduct surveillance operations on the Plaintiff. This surveillance apparently took place between June 1 and June 3, 2010;

27. In a letter of June 9, 2010, to Judith D'Amico of Prudential from Michael Anderson, Field Operations Manager for Factual Photo, Inc., Mr. Anderson states:

    "As you are aware, we conducted surveillance on Sheila Hennebury on June 1, 2 and 3, 2010. During this time, we obtained videotape of your subject standing, walking and pulling."

28. Again, on the first page of Factual Photo's "Surveillance Report", the writer provides the following physical description of "Ms. Hennebury":

    "Ms. Hennebury may be described as a 58 year old white female, approximately 5'6" tall and weighing around 180 pounds. **She has red hair**."

(Emphasis added);

29. Below this "Physical Description" is a series of pictures allegedly taken on June 1, 2010. In two of the photos, a woman with a red pony tail is seen retrieving garbage cans from the roadside. The writer indicates that this is the Plaintiff, Ms. Sheila Hennebury. **It is not. The woman depicted in the photos is, again, Linda Hennebury, Ms. Hennebury's sister with whom Ms. Hennebury lives.**

30. The writer further obtained information during a "discreet neighborhood canvas" indicating the following:

    "Through sources, we were informed Ms. Hennebury is typically home throughout the day. She is not known to be currently employed and is seldom seen engaged in the maintenance of her home's exterior or the property."

(Page 3 of Surveillance Report, emphasis added);

## The Carelessness with which Surveillance was Conducted Tainted the Entire Appeals Process

31. In the administrative record forwarded to undersigned counsel by Prudential Insurance Company, a Peer Review Report with a referral date of June 1, 2010 from Dr. Albert C. Fuchs is found;

32. Dr. Fuchs defers to other physicians with respect to Plaintiff's primary and most disabling conditions, however Dr. Fuchs does opine that Ms. Hennebury is not disabled by her asthma or reflux condition;

33. When Dr. Fuchs is asked if Ms. Hennebury's self-supported functional capacity is consistent with the activities noted in the <u>surveillance report of August, 2009</u>, Dr. Fuchs answers as follows:

> "The Claimant's self-reported functional capacity is not consistent with the activities noted in the enclosed documentation. The Claimant is reported to be unable to drive and walk with a cane. <u>The surveillance report describes that she is observed driving and walking presumably without assistive devises.</u>"

(See Page 6 of Fuchs' Peer Review Report, emphasis added);

34. It is clear in this instance that the erroneous surveillance information provided to Dr. Fuchs has drastically and dramatically colored his view towards the Plaintiff and is likely resulting in his erroneous conclusion that Ms. Hennebury is not disabled;

35. Also included in the administrative record received from Prudential is a Peer Review Report with a referral date of June 1, 2010 from Dr. Philip J. Marion;

36. The report written by Dr. Marion consist primarily of his identification of the medical records submitted to Prudential by Ms. Hennebury. The report states clearly:

> "I reviewed the Factual Photo Investigation Report dated 8/18/09 noting surveillance on 08/09/09, 08/12/09 and 08/16/09. No activity was seen 8/09/09 and 8/16/09. On 8/12/09 the Claimant was seen walking, driving, entering and exiting a store, returning home, ascending stairs, walking in her yard, carrying and unidentified item, leaning forward and bending at the waist."

(See Page 3, Marion Peer Review Report);

37. Later in the report, Dr. Marion states again:

> "Also available for review is a public video surveillance report dated 08/18/09. This report indicates the Claimant was observed, "standing, walking, ascending steps, carrying, leaning, bending, entering and exiting a vehicle, and driving.""

38. Prudential asked Dr. Marion only three questions which are addressed in his report. Question number 2 asks whether Ms. Hennebury's self reported functional capacity [is] consistent with the activities noted in the enclosed documentation (Surveillance Report of August, 2009). In answer to this question Dr. Marion states:

> "Ms. Hennebury's self-reported functional capacity is not consistent with the activities noted in the first documentation, specifically the

> surveillance report of August, 2009. Contrary to the Plaintiff's assertion the functional capacity, the Claimant was observed completely functionally independent performing routine outdoor activities. Se was observed ambulating without an assistive devise and driving a motor vehicle."

(See Page, Marion Peer Review Report);

39. Again, the negative effect of the bogus surveillance report is clearly felt. Dr. Marion is also approaching the review believing that the Plaintiff has misrepresented her condition;

40. Also in the administrative record provided by Prudential a peer review report of a referral date of June 1, 2010 is found submitted by Dr. Mark R. Burns;

41. Dr. Burns report is clearly heavily influenced by the surveillance video as well;

42. Early in the substantive section of his report, Dr. Burns is careful to mention the following:

> "The surveillance on 08/12/09 shows her driving and walking without assistive devices; she had told her PCP she needed a cane and could not drive."

(See Page 6, Burns Peer Review Report);

43. As Dr. Burns is the rhumatologist consulted in this matter, he specifically addresses the clear diagnosis of PMR as found by Ms. Hennebury's treating physicians. **Similarly to doctors Marion and Fuchs, Dr. Burns never examined the Plaintiff.** Despite this, Dr. Burns arrives at the inexplicable conclusion that the diagnosis of PMR is somehow suspect;

44. The above notwithstanding, it is clear that Dr. Burns's review is also heavily influenced by the surveillance video taken of Ms. Hennebury's sister, Linda;

45. When Dr. Burns is asked whether Ms. Hennebury self reported functional capacity is consistent with the activities noted in the surveillance report of August, 2009, he answers as follows:

> "Ms. Hennebury's self-reported functional capacity is not consistent with the activities noted in the enclosed documentation (Surveillance Report for August, 2009). The available surveillance showed the Claimant walking and driving without any apparent impairment. This does not support the statement to her PCP and documented 12/08/08 and 01/13/09 that she needs a cane and cannot drive. No other impairments are noted."

(See Page 8, Burns Peer Review Report);

46. When Dr. Burns is asked to provide a detailed explanation supporting his opinion that Ms. Hennebury is not functionally impaired, Dr. Burns states, *intra alia*, "the surveillance does not support impairment." (See Page 9, Burns Peer Review Report);

47. As is obvious from the foregoing report excerpts from Prudential's Peer Reviewers, the erroneous and irrelevant surveillance of Ms. Hennebury's sister has figured heavily into the determination that Ms. Hennebury is not disabled;

48. The extreme carelessness exhibited by Prudential in arriving at their determination that Ms. Hennebury is not disabled supports Plaintiff's assertion in this matter that Prudential has asked in an arbitrary and caprious fashion and has abused its discretion, thus warranting intervention by the Court in awarding Plaintiff the Long Term Disability Benefits to which she is rightfully entitled;

## CLAIM FOR RELIEF
### (Recovery of Plan Benefits, 29 U.S.C. §1132(a)(1)(B))

49. Plaintiff incorporates paragraphs 1 through 48 into this Claim for Relief;

50. This is a claim to recover benefits, enforce rights, and clarify rights to future benefits under 29 U.S.C. §1132(a)(1)(B);

51. Pursuant to §1132(a)(1)(B), Plaintiff, as a participant in the Prudential Long Term Disability Plan, is entitled to initiate this action for a judicial determination and enforcement of benefits;

52. Defendants improperly denied Plaintiff's Long Term Disability Benefits to which she is entitled under the terms of Prudential Insurance Plan, in contravention of the Plan and ERISA;

53. Based on the facts articulated above, Plaintiff asserts Defendants' denial of Plaintiff's Long Term Disability Benefits was arbitrary and capricious;

54. Based on the facts articulated above, Plaintiff asserts Defendants' denial of Plaintiff's Long Term Disability Benefits constitutes an abuse of discretion.

WHEREFORE, the Plaintiff, Sheila N. Hennebury, respectfully requests this Honorable Court:

A. Enforce Plaintiff's rights under Defendant's group insurance plan;

B. Order Defendant to pay all past due disability benefits;

C. Order Defendant to pay ongoing disability benefits until such time that Plaintiff may no longer be considered disabled under the terms of Defendant's insurance policy;

D. Order Defendant to pay interest on past due disability benefits;

E. Order Defendant to pay Plaintiff's reasonable attorneys' fees and costs, pursuant to 29 U.S.C.A. 1132(g)(1); and

F. Order such other and further relief as the Court deems equitable, just and proper.

Respectfully submitted,
Sheila N. Hennebury
By her attorneys,
Normandin, Cheney & O'Neil, PLLC

Date: 3/28/11

By: _____
William D. Woodbury (16195)
P.O. Box 575
Laconia, N.H. 03247-0575
(603)-524-4380